IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Criminal No. 2:25-cr-113 - 1 |
| v. | Hon. William S. Stickman IV |
| YAMIN A. HARRIS, | |
| *Defendant*. | |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

On April 18, 2025, Defendant Yamin A. Harris ("Harris") was charged in a one-count federal criminal complaint with Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). Thereafter, on April 23, 2025, a federal grand jury sitting in the Western District of Pennsylvania charged Harris in a three-count indictment with: Count One – Hobbs Act Robbery, in violation of 18 U.S.C. § 1951; Count Two – Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and Count Three – Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii). (ECF No. 11). Harris has been detained since his arrest on December 29, 2024.

On December 18, 2025, a detention hearing was conducted by United States Magistrate Judge Kezia O. L. Taylor. She found by clear and convincing evidence that no condition or combination of conditions of release imposed upon Harris would reasonably assure the safety of any other person or the community and that Harris was a flight risk. Magistrate Judge Taylor also held that continued detention was appropriate because (1) the weight of the evidence against

1

Harris is strong; (2) his lack of significant family or other ties to the community; (3) his lack of stable employment; (4) prior attempt(s) to evade law enforcement; (5) Harris' prior criminal history; and (6) his prior violations of probation, parole, and/or supervised release.  (ECF No. 49).

The Court has undertaken a *de novo* review of the transcript of the December 18, 2025, detention hearing, the parties' arguments in their respective pleadings (ECF Nos. 68, 76, and 77), and the evidence of record.[1]  For the following reasons, the Court will affirm the Order of Detention.  (ECF No. 49).  Harris will remain detained pending trial.

## I.    STANDARD OF REVIEW

For defendants charged with certain offenses enumerated in 18 U.S.C. § 3142(e)(3)(E), a rebuttable presumption arises that no condition or combination of conditions of release will assure the appearance of the person or the safety of the community.  Thus, the Bail Reform Act sets a presumption in favor of detention.  In this case, the relevant offense is Count Three, a violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(A)(ii).  *See* 18 U.S.C. § 3142(e)(3)(B). Thus, a rebuttable presumption exists that no condition or combination of conditions of release will reasonably assure the appearance of Harris or reasonably assure the safety of the community from further crimes committed by him.[2]  *See* 18 U.S.C. § 3142(e)(3).

To rebut this initial presumption, the burden is on Harris to produce credible evidence that he will appear as directed and not present a threat to the community.  *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).  Even if he satisfies his initial burden of production

---

[1] A district judge reviews the decision of a magistrate judge granting or denying bail *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  It retains the discretion to make its determination after reviewing the record developed before the magistrate judge or to accept additional evidence from the parties and rule on an expanded record.  *See* 18 U.S.C. § 3142(f)(2)(B).

[2] The parties do not dispute that a rebuttable presumption exists.  (ECF Nos. 65, 68, and 76).

to rebut the presumption against release, it does not completely eliminate the presumption favoring detention from further consideration; rather, it remains a factor to be considered amongst those weighed by the Court. However, rebuttal of the initial presumption against detention shifts the burden to the Government to demonstrate by clear and convincing evidence that Harris is a danger to the community, and/or by the lesser standard of a preponderance of the evidence, that he is a flight risk. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

In making its determination on whether there are conditions or a combination of conditions of release that will reasonably assure the appearance of Harris and the safety of the community, the Court must weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g). The factors are: (1) the nature and seriousness of the offenses charged; (2) the weight of the evidence against Harris; (3) the history and characteristics of Harris; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Harris' release. 18 U.S.C. § 3142(g).

## II.   ANALYSIS

### A.  Harris has not rebutted the presumption of detention.

The Court must make the initial determination as to whether Harris has proffered sufficient evidence to rebut the initial presumption against pretrial release. The presumption of pretrial detention may be rebutted if the defendant can produce "some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Carbone*, 793 F.2d at 560. The evidentiary burden of rebutting the presumption has been interpreted as being "relatively light." *United States v. Griffin*, No. CRIM 07-02 ERIE, 2007

WL 510140, *2 (W.D. Pa. Feb. 12, 2007).  Although the burden is relatively light, it is still a burden, and the evidence presented to rebut the presumption must credibly assure the Court that the Harris does not pose a risk of flight or danger to the community.

Harris argues that the following three things constitute sufficient evidence to rebut the presumption of detention: (1) that he has spent his entire life in Pittsburgh, Pennsylvania and thus has substantial and longstanding ties to the community; (2) that he does not possess a passport so he presents a minimal risk of international flight; and (3) that he is amenable to a "third-party custodianship, home detention, electronic monitoring, location monitoring, firearm prohibitions, substance abuse testing and treatment, reporting requirements through Pretrial Services and/or any additional condition imposed by the Court."  (ECF No. 68, p. 3).  At the hearing before Magistrate Judge Taylor, Harris offered Medina Malloy ("Malloy"), his girlfriend, as a third-party custodian.  (ECF No. 65, pp. 20-21).  Malloy knew Harris for approximately two years, resided in Allegheny County, did not own firearms or large animals, and was employed working four days a week with intellectually disabled adults.  (*Id*.).

First, the Court acknowledges that Harris has ties to the community.  He has lived his entire life in the Western District of Pennsylvania, and he has a relationship with his sister as well as Malloy.  However, Harris has not presented any current, on-going community ties.  He has been detained since December 29, 2024.  Prior to his arrest, Harris was in the community for only a brief period of time as he had recently been recently released from a 10 to 20 year term of imprisonment imposed in 2013.  The Court holds that the minimal evidence of community ties is not enough to rebut the presumption of detention.  It does not, as Harris argues, support a finding that he does not present a flight risk or pose a danger to the community.

Second, the Court does not believe that the willingness of Malloy, Harris' girlfriend, to serve as a third-party custodian is sufficient evidence to rebut the presumption of detention. As of December 18, 2025, she had only known Harris for two years. The mere fact that she is willing to serve as a third-party custodian is not enough to justify release, but is among the factors to be considered by the Court. The Court appreciates the help that Malloy is willing to provide Harris and does not doubt her sincerity. However, this living arrangement would amount only to reinstating Harris to the *status quo ante*, the very situation which existed at the time of the underlying acts—a situation where Harris was in a relationship with Malloy and spending time at her home. While in that same situation, Harris allegedly committed the very serious offenses charged herein. The Court finds little reason to accept Harris' contention that his behavior going forward would be different.

Third, the Court rejects Harris' argument that his lack of a passport is credible evidence that he does not pose a flight risk. While this might mitigate against him traveling internationally, some of the criminal conduct at issue involves Harris' flight from the police. Nothing about his lack of a passport prevents him from fleeing the jurisdiction of the Court. It also does not prevent Harris from secreting himself within the jurisdiction by moving to a different location therein. Harris has an incentive to flee as the weight of the evidence against him is strong, as reflected by the grand jury's return of the indictment which establishes probable cause that the charged offenses occurred. *See Kaley v. United States*, 571 U.S. 320, 328 (2014) ("[A]n indictment fair upon its face, and returned by a properly constituted grand jury, ... conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.") (internal quotation marks and citation omitted)). There is no evidence in the record that Harris has a strong and well-defined network of friends, neighbors, and co-workers

that would tie him to the Court's jurisdiction.  Finally, and most critically, Harris' prior interactions with law enforcement authorities call into question his reliability and trustworthiness.

For these reasons, the Court holds that the evidence proffered by Harris to support his release does not rebut the presumption of detention.  Detention is mandated, and Magistrate Judge Taylor's detention order will be affirmed.

### B. Even if Harris had rebutted the presumption of detention, no condition or combination of conditions would assure the safety of any other person or the community.

In the alternative, even if Harris had rebutted the presumption, the Court's conclusion would be the same because the Government proved by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community.

#### 1) Nature and Circumstances of Offense Charged and Weight of the Evidence

The nature of the crimes charged weigh heavily against release.  18 U.S.C. § 3142(g)(1). Harris is charged with Hobbs Act Robbery, Possession of a Firearm and Ammunition by a Convicted Felon, and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence.  Possession of a firearm in furtherance of a crime of violence is a serious offense, which Congress recognized by including this crime among those to which the rebuttable presumption applies.  If convicted, Harris is facing a significant term of imprisonment in light of his criminal history.

Moreover, although there is a presumption of innocence, the weight of the evidence against Harris is strong.  18 U.S.C. § 3142(g)(2).  On December 29, 2024, Harris entered his former place of employment, Burger King, and committed a robbery armed with a 9mm semi-

automatic pistol and cattle prod-type taser.  Harris tased some employees, and they were terrified of him.  There was a high risk of bodily harm to employees and patrons of the Burger King.  One victim fears retribution if Harris were released on bond.  (ECF No. 65, pp. 8-13).  After leaving with the business's cash, Harris fled from the police by vehicle and then by foot.  In so doing, he created a high risk of bodily harm to law enforcement officers and bystanders.

Both the nature of the charges and the weight of the evidence in support of the charges weighs in favor of pretrial detention.

### 2) History and Characteristics of Harris

Harris is thirty-one years old.  He was born in Erie, Pennsylvania and has lived in the Western District of Pennsylvania his entire life.  He has a relationship with one sister and Malloy.  Until his arrest, he used cannabinoids on a daily basis.  Harris has no meaningful history of employment.  In 2024, he worked for sixth months with E.O.S. Energy.  Thereafter, he worked at Burger King for one month before he was fired.  Harris has no job to return to. With a negative net worth and no source of legitimate income, the Court is concerned that Harris would be tempted to engage in criminal conduct if released.

As to his criminal history, Harris is a convicted felon with a predilection for committing robberies.  He was adjudicated delinquent of robbery in 2010 at age fifteen.  He committed three separate robberies in 2012 that involved threats of violence.  In one he possessed a firearm.  In July 2013, Harris was sentenced to 10 to 20 years of imprisonment.  The conduct in this case occurred while Harris was on state parole.  His criminal history indicates a general disrespect for the law and a willingness to terrorize others.  The Court holds that this criminal history, on top of other personal characteristics of Harris, weighs in favor of pretrial detention.

7

### 3) Risk of Danger to the Community

Finally, the Court must assess the risk that Harris would pose to the community if he were released. 18 U.S.C. § 3142(g)(4). It is alleged that Harris robbed a Burger King at gunpoint and tased some employees. Thereafter, he led law enforcement on a vehicle and foot chase. The charged criminal conduct demonstrates that he has a blatant disregard for the safety of others. It is clear that he poses a danger to the community as he is a recidivist robber who persists in threatening others. There is no doubt that the safety of the community would be placed in peril by his release. Strict conditions of release, including conditions such as home confinement and electronic monitoring, simply cannot guarantee that Harris will no longer engage in criminal activity. He was on state parole for robbery when he committed the charged criminal conduct in this case. The Court is convinced of his continuing dangerousness. Harris' criminality is not a thing of the past. He has never meaningfully contributed to society. There is nothing before the Court demonstrating that Harris has any respect for the law. Detention pending trial is more than appropriate.

## III.   CONCLUSION

After consideration of the entire record and arguments of the parties, the Court concludes that Harris has failed to rebut the initial presumption that no condition or combination of conditions of release would reasonably ensure the safety of the community if he were released pending trial or his risk of flight. This alone warrants detention. However, the Court's examination of the materials before it leads it to the conclusion that, even if had rebutted the presumption, the Government, by clear and convincing evidence, persuaded it that no condition or combination of conditions would reasonably ensure the safety of the community. Additionally, the Court believes that Harris remains a flight risk.

8

By Order of Court to follow, Harris' motion will be denied and Magistrate Judge Taylor's detention order will be affirmed.

BY THE COURT:

s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

July 14, 2026
Date

9